Daniel Allen **BRADSHAW**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–00–368–CR.

Court of Appeals of Texas, Waco.

Nov. 21, 2001.

Shelly D. Fowler, Cleburne, for appellant.

Dale S. Hanna, Johnson County Dist. Atty., David W. Vernon, Johnson County Asst. Dist. Atty., Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Daniel Allen Bradshaw was convicted of three counts of aggravated sexual assault and one count of indecency with a child. At punishment, Bradshaw pled true to one prior felony offense. The State also introduced evidence of two more felony offenses and four misdemeanor offenses committed by Bradshaw. The jury sentenced Bradshaw to life in prison on each count of aggravated sexual assault and to twenty years in prison on the count of indecency with a child. In two issues, Bradshaw appeals. We affirm the judgment.

### BACKGROUND

E.H. was ten years old and lived with her aunt and uncle, Margaret and Rowdy, in Cleburne, Texas. Her mother, Lisa, had been in prison and resided in a halfway house in Waco. Lisa met Bradshaw at the halfway house. Lisa was released from the halfway house in December of 1999. She and Bradshaw moved in with her sister, Leigh Ann. Leigh Ann lived diagonally across the street from Rowdy and Margaret.

Soon after Lisa moved in with Leigh Ann, E.H. and her brothers moved in as well. E.H. alternated sleeping on the couch with her brothers. One evening, E.H. and Bradshaw sat on the couch watching television. E.H. was ready for bed. Lisa sat in a nearby chair. Bradshaw put his hand under the covers, pulled E. H.'s panties aside, and inserted a finger inside E. H.'s vagina. Over the next two months, Bradshaw assaulted E.H. in a similar manner two more times. E.H. told Terry, Leigh Ann's 11 year old son, about the incidents.

B.W. was E. H.'s best friend. She was 11 years old and often visited E.H. at Leigh Ann's house. One day, Bradshaw approached B.W. from behind, put his hands around her waist, raised up her cropped-top shirt, and fondled her breasts. B.W. quickly pulled away. She told E.H. who replied that Bradshaw had molested her.

At some point, E.H. told Lisa that Bradshaw had touched her. Lisa confronted Bradshaw who denied the accusation. Lisa then confronted both Bradshaw and E.H. After much yelling and screaming, E.H. recanted her accusation.

Ultimately, Terry told his mother, Leigh Ann, about E. H.'s problem. Leigh Ann asked her fiancee, Rick, for advice on what to do. Based on his advice, Leigh Ann talked to E.H. in private at Rick's shop. E.H. told Leigh Ann that Bradshaw had inserted his finger into her vagina on three separate occasions. In the meantime, B. W.'s father overheard Leigh Ann's initial conversation with Rick. Knowing B.W. and E.H. were best friends, he went home to ask B.W. if anything had happened to her. She told her father that Bradshaw fondled her breasts.

### EXTRANEOUS OFFENSE EVIDENCE

At the end of its case-in-chief, the State asked to call Amanda, E. H.'s 14–year–old cousin, to the stand, under Rule 404(b) of the Rules of Evidence, for the limited purpose to show intent, preparation and plan, absence of mistake or accident. Bradshaw objected: first under Rule of Evidence 403, that the evidence would be more prejudicial than probative, and second that the evidence does not meet even Rule 404(b)'s requirements.

In a hearing outside the jury's presence, Amanda testified that while sitting beside her watching television at E. H.'s house,

Bradshaw rubbed her inner thigh and moved his hand up her leg until he touched the top of her vagina. She testified that this same scenario occurred four to five times. Amanda would either get up or push his hand away. The trial court overruled Bradshaw's 404(b) objection. The court also found that the probative value of the evidence was not outweighed by the danger of unfair prejudice. A limiting instruction was read to the jury and later included in the charge to the jury. Amanda then testified to the same information before the jury. The State rested its case after her testimony.

■ In his first issue, Bradshaw argues that the evidence was inadmissible under either rule.[1]

APPLICABLE LAW

■ The general rule is that an accused may not be tried for being a criminal generally. *Couret v. State,* 792 S.W.2d 106, 107 (Tex.Crim.App.1990); *Hankton v. State,* 23 S.W.3d 540, 545 (Tex.App.— Houston [1st Dist.] 2000, pet. ref'd). Evidence of other crimes, wrongs or acts are not admissible to prove the character of the defendant and that he acted in conformity with that character. TEX.R. EVID. 404(b); *Hankton,* 23 S.W.3d at 545. However, evidence may be admissible if it has relevance separate from the tendency to prove the defendant's character. TEX.R. EVID. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim.App.1991) (op'n on rh'g). A party may introduce such evidence where it tends to establish some elemental fact, such as identity or intent; some evidentiary fact, such as motive, op-

portunity or preparation, leading inferentially to an elemental fact; or "it rebuts a defensive theory by showing, e.g., absence of mistake or accident." *Montgomery,* 810 S.W.2d at 387 388. When a defendant claims his act was free from criminal intent, extraneous offenses are relevant to prove guilty intent. *Plante v. State,* 692 S.W.2d 487, 491–92 (Tex.Crim.App.1985); *Rankin v. State,* 995 S.W.2d 210, 213 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

■ Appellate courts measure the trial court's rulings concerning the admissibility of evidence of other crimes, wrongs, or acts under Rule 404(b) by an abuse of discretion standard. *Id.* at 391; *Hankton,* 23 S.W.3d at 546. As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not interfere with the ruling. *Id.*

404(b) ANALYSIS

■ The State argues that Amanda's testimony was admissible under Rule 404(b) because it tended to show, among other things, intent and absence of mistake or accident.

During the trial, Bradshaw announced to the jury in his opening statement that the evidence would show he was only giving E.H. a "harmless" massage and his hand may have brushed her sexual organ. He also argued that E.H. "concocted" the story because she did not like him. Bradshaw also explained in his opening statement that he was merely trying to pick B.W. up off the kitchen floor when she looked to be unconscious.

1. One argument the State makes on appeal is that Bradshaw's 404(b) argument is waived because he first objected under Rule 403, not 404(b) as required by *Montgomery v. State,* 810 S.W.2d 372 (Tex.Crim.App.1990). We do not read *Montgomery* so strictly as to require a specific order of objections or waive the objection on appeal. As long as both objections are made in the context of an extraneous offense or bad act evidence admission, we will review those arguments on appeal.

During cross-examination of E. H., Bradshaw attempted to undermine her credibility by showing the jury that the three incidents occurred with many people in the house and with her mother in the chair next to E.H. and Bradshaw. After the State rested its case, Bradshaw called E. H.'s mother, Lisa, to the stand. She stated E.H. told her that Bradshaw had been molesting her. Lisa confronted Bradshaw, and he denied the accusation. She and Bradshaw confronted E.H. After much yelling and screaming, Lisa said E.H. recanted her accusation. Later, when Bradshaw was arrested, Lisa said E.H. again recanted and said she and B.W. had made up the accusations.

Bradshaw's defensive theories were that he accidentally touched both of the girls or that E.H. had made up the accusations against him. Thus, Amanda's testimony was relevant to show intent and an absence of mistake or accident. The trial court did not abuse its discretion in admitting Amanda's testimony over Bradshaw's 404(b) objection.

403 ANALYSIS

Bradshaw also argues on appeal that the probative value of Amanda's testimony was substantially outweighed by the danger of unfair prejudice. We must, therefore, decide whether the trial court abused its discretion in admitting the testimony over his Rule 403 objection.

*Law*

■ A presumption exists that relevant evidence is more probative than prejudicial. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997). Reviewing the trial court's judgment for abuse of discretion requires more than deciding that the court conducted the required balancing of probative value versus the danger of unfair prejudice and did not rule arbitrarily or capriciously. *Montgomery*, 810 S.W.2d at 392. The trial court's deter-

mination must be reasonable in view of all the relevant facts. *Santellan*, 939 S.W.2d at 169.

*Trial Court's Review*

■ A Rule 403 balancing test by the trial court includes the following factors:

1. how compellingly the extraneous evidence serves to make a fact of consequence more or less probable—a factor which is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense;

2. the potential the other evidence has to impress the jury "in some irrational but nevertheless indelible way;"

3. the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense;

4. the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute.

*See Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim.App.2000); *Magee v. State*, 994 S.W.2d 878, 888 (Tex.App.—Waco 1999, pet. ref'd); *see also Montgomery*, 810 S.W.2d at 389–390.

*factor one-strength of evidence*

That Bradshaw attempted to inappropriately touch Amanda makes the fact that he inappropriately touched E.H. and B.W. more probable than not. The more often an act has occurred, the less likely it occurred unintentionally. *Rankin*, 995 S.W.2d at 213. Also, Bradshaw did not significantly attack Amanda's testimony.

*factor two-irrational, indelible impression*

Testimony that Bradshaw had attempted similar acts with Amanda had the po-

tential to impress the jury in some irrational, yet indelible way. The jury could not help but be impacted by her testimony. This is especially so when the jury heard this evidence at the end of the State's case-in-chief.

*factor three-time needed*

The State called six witnesses at trial. It did not spend a significant amount of time in presenting Amanda's testimony.

*factor four-proponent's need*

The State needed this evidence. Two children, ages 10 and 11, made sexual accusations against Bradshaw. Their testimony was corroborated only by the adults to whom they made their outcries. Bradshaw contended the acts were either fabricated or accidental. Amanda's testimony corroborated E. H.'s and B. W.'s accusations.

*Appellate Court's Review*

■ As the appellate court, we must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. *Montgomery*, 810 S.W.2d at 392. The four relevant criteria as identified by the Court of Criminal Appeals are: (1) that the fact at issue was not seriously contested; (2) that the State had other convincing evidence to establish the issue; (3) that the probative value of the evidence was not particularly compelling; and (4) that the evidence was of such a nature that a limiting instruction would not likely have been effective. *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim.App.2000); *Montgomery*, 810 S.W.2d at 392–393. When the record demonstrates one or more of the relevant criteria contributing to a risk that the probative value of the tendered evidence is substantially outweighed by the danger of unfair prejudice, then we should conclude that the trial court abused its discretion. *Reese*, 33 S.W.3d at 241; *Montgomery*, 810 S.W.2d at 393.

*evaluation of each criteria*

■ Bradshaw's defense rested on two theories: 1) if he touched the girls, the acts were unintentional, and 2) E.H. made up both accusations because she did not like Bradshaw. Since E. H.'s credibility was attacked, the State had no other independent corroborating evidence because even the outcry witnesses were based on E. H.'s credibility. Thus, the probative value of Amanda's testimony which related acts similar to those committed against E.H. was particularly compelling. Lastly, the jury received a limiting instruction from the trial court. Amanda's testimony was not of such a nature as to impair the efficacy of the limiting instruction.

None of the relevant criteria are present. Thus, we find the trial court did not abuse its discretion in admitting this testimony over Bradshaw's Rule 403 objection.

Bradshaw's first issue is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Bradshaw contends his trial counsel was ineffective for failing to object to the outcry testimony of Leigh Ann because it violated article 38.072 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PRO. ANN. art. 38.072 (Vernon Pamp.2001).

### APPLICABLE LAW

In assessing the effectiveness of counsel, whether in the guilt/innocence or punishment phase, we apply the test set forth by the Supreme Court in *Strickland v. Washington*. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App.1999); *Ex parte Jarrett*, 891 S.W.2d 935, 938 (Tex.Crim.App.1994). *Strickland* requires us to determine whether:

(1) counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result. *Thompson v. State,* 9 S.W.3d 808, 812–813 (Tex.Crim.App.1999).

▬▬▬ "Consideration of the 'totality of the representation,' rather than isolated acts or omissions of trial counsel, determines whether this standard has been met." *Ex parte Kunkle,* 852 S.W.2d 499, 505 (Tex.Crim.App.1993) (quoting *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim. App.1983)); *accord Ferguson v. State,* 639 S.W.2d 307, 310 (Tex.Crim.App. [Panel Op.] 1982). We strongly presume that counsel's conduct lies within the "wide range of reasonable representation." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Ineffective assistance of counsel is not an allegation that should be made lightly. *Estes v. State,* 985 S.W.2d 684, 685 (Tex.App.—Fort Worth 1999, pet. ref'd). The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. *Thompson,* 9 S.W.3d at 813.

▬▬▬ In some situations, a single egregious error or omission on counsel's part can be considered ineffective assistance. *Thompson,* 9 S.W.3d at 813; *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex. Crim.App.1991); *Pena–Mota v. State,* 986 S.W.2d 341, 344 (Tex.App.—Waco 1999, no pet.). Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See Strick-*

*land,* 466 U.S. at 689, 104 S.Ct. at 2065; *Thompson,* 9 S.W.3d at 813. "Representation is not ineffective simply because, in hindsight, the attorney could have or even should have done something differently." *Godwin v. State,* 899 S.W.2d 387, 391 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd). Allegations of ineffective assistance of counsel must be firmly founded in the record. *Thompson,* 9 S.W.3d at 813.

OUTCRY WITNESS

Leigh Ann was the outcry witness for E.H. The Code of Criminal Procedure provides:

Sec. 2. (a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and

(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

TEX.CODE CRIM. PRO. ANN. art. 38.072, § 2(a) (Vernon Pamp.2001). Bradshaw contends that the outcry witness should have been E. H.'s mother, Lisa, because Lisa was the first person whom E.H. told about the abuse by Bradshaw.

*Evidence*

E.H. testified that as her mom dropped her off at a friend's house, she told her mom that Bradshaw had been touching her. At this news, her mother simply dropped her off and proceeded home. E.H. stated she did not give her any details about what had happened. Lisa corroborated E. H.'s testimony that she dropped E.H. off at a friend's after hearing that Bradshaw had been bothering E.H. She offered no other details about what E.H. told her.

Leigh Ann testified that due to her son's information, she confronted E.H. privately and asked her if Bradshaw had been touching her. E.H. replied that he had done so. Leigh Ann asked E.H. where the touching had occurred, and E.H. pointed to the area between her legs. Leigh Ann further pressed E.H. and asked how Bradshaw touched her. She testified that E.H. told her Bradshaw put his finger inside of her approximately three different times. Leigh Ann also testified that E.H. was afraid to tell anyone because she thought Bradshaw would hurt her.

*Law*

■ The Court of Criminal Appeals has interpreted article 38.072, section 2(a) to mean that the outcry witness must be the first person, 18 years old or older, to whom the child makes a statement that in some discernible manner describes the alleged offense. *Garcia v. State,* 792 S.W.2d 88, 91 (Tex.Crim.App.1990). The statement must be more than words which give a general allusion that something in the area of child abuse was going on. *Id.* The societal interest in curbing child abuse would hardly be served if all that "first person" had to testify to was a general allegation from the child that something in the area of child abuse was going on at home. *Id.* The Court declined to read the statute as meaning that any statement that arguably relates to what later evolves into a allegation of child abuse against a particular person will satisfy the requisites of section 2(a)(2). *Id.* The statute demands more than a general allusion of sexual abuse. *Id; see also Campos v. State,* 977 S.W.2d 458, 460 (Tex.App.—Waco 1998, no pet).

APPLICATION

■ The statement by E.H. to Lisa was only a general allusion to sexual abuse. An objection by Bradshaw's trial counsel about the designation of the outcry witness would not have been sustained. Therefore, Bradshaw did not establish that his counsel rendered ineffective assistance of counsel. His second issue is overruled.

CONCLUSION

Having overruled Bradshaw's two issues, the trial court's judgment is affirmed.